**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTHONY GEORGE GANCARSKI,

Plaintiff,

v. Case No. 3:25-cv-455-MMH-MCR

UNITED STATES DEPARTMENT
OF EDUCATION, et al.,

Defendants.

____________________________________/

# COMPLAINT FOR A CIVIL CASE

## 1. The Parties to This Complaint

**Plaintiff:** Anthony George Gancarski

4530 St. Johns Ave Ste 15, #183

Jacksonville, FL 32210-3356

(904) 563-3534

325CV455Plaintiff@proton.me

**Defendants:** The United States Department of Education

400 Maryland Avenue, SW

Washington, DC 20202

(202) 401-6000

Linda McMahon, in her official capacity as Education Secretary
400 Maryland Avenue, SW
Washington, DC 20202
(202) 401-6000

## II. Basis for Jurisdiction: Federal Question

This is a federal question with the following federal statutes, regulations, and precedent at issue in this case.

1. Article III, Section 2, Clause 1 grants "judicial power" to rule in controversies where the United States is a "party."

2. The Higher Education Act and its implementing regulations require the Department to administer federal student loans in accordance with prescribed rules, including transitioning loans from grace to repayment status after six months. See 20 U.S.C. § 1087e; 34 C.F.R. § 685.207.

3. The Administrative Procedure Act authorizes courts to compel agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), and to set aside agency actions that are arbitrary, capricious, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A).

4. The Mandamus Act, 28 U.S.C. § 1361, authorizes courts to compel an agency to perform a clear, non-discretionary duty owed to a plaintiff.

5. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes courts to declare the rights and legal relations of parties in cases of actual controversy.

6. Defendants' failure to transition Plaintiff's loans into repayment status and to properly apply the Department's one-time account adjustment violates the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(1) and 706(2)(A), and the Higher Education Act (HEA), 20 U.S.C. § 1070 et seq.

7. Federal direct student loans are subject to a six-month grace period following a borrower's graduation or cessation of at least half-time enrollment, after which the loans must enter repayment status. See 34 C.F.R. § 685.207(b)(1) (Direct Loans).

8. The Higher Education Act of 1965, as amended (20 U.S.C. § 1087e), which governs IDR plans, with modifications promulgated in the Federal Register, Vol. 88, No. 130, on Monday, July 10, 2023, and reflected here: https://studentaid.gov/announcements-events/idr-account-adjustment

9. The "hardship prong" established in the 1967 Supreme Court case Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), calls for timely review given further delay causes undue, disproportionate hardship to the Plaintiff, as has been caused since June 19, 2024.

## III. Statement of Claim

1. From 1996 to 1998, Plaintiff obtained eight (8) federal Direct Student Loans (the "Loans") to finance graduate education at the American University College of Arts and Sciences.

2. He entered into a direct loan agreement with the U.S. Department of

Education for borrowing and repayment of the Loans.

3. Plaintiff graduated from American University on or about December 18, 1998.

4. In accordance with applicable law, Defendants provided a six (6) month grace period following graduation before Plaintiff was obligated to begin repaying his Loans.

5. On or about June 19, 1999, Plaintiff timely began repaying his Loans following the end of the six (6) month grace period.

6. Under the Income-Driven Repayment (IDR) program which Plaintiff utilized to repay the Loans, he should have been eligible for forgiveness after twenty-five (25) years of repayment (on or about June 19, 2024).

7. However, Defendants did not recognize Plaintiff's active repayment of the Loans.

8. Instead, for nearly 14 years of active repayment (starting on or about June 19, 1999 and ending on February 15, 2013), Defendants erroneously maintained Plaintiff's Loans in "grace" status, far exceeding the six-month grace period set forth under applicable law.

9. As a result, Defendants failed to credit Plaintiff with nearly 14 years (165 months) of qualifying payments toward forgiveness under the IDR program.

10. This error persists despite the loan servicer's website and Defendants' own website (studentaid.gov) both showing that Plaintiff began repayment on June 19, 1999.

11. In 2023, the U.S. Department of Education promulgated guidance it would offer a "one-time adjustment" to Direct Student Loans utilizing the IDR Program (the "2023 One-Time IDR Account Adjustment") given servicer errors that affected a still undisclosed number of borrowers, including Plaintiff.

12. The 2023 IDR Account Adjustment acknowledged administrative failure in registering the end of the six-month grace periods for some borrowers, including Plaintiff: "*In some cases, prior servicers reported grace periods that were longer than the loan program terms allowed for. In these cases, we treated those extra months of the grace period as time in repayment.*"

13. However, despite Plaintiff's clear legal entitlement, Defendants failed to provide him with the promised relief under the 2023 One-Time IDR Account Adjustment.

14. Defendants' failure to apply the 2023 One-Time IDR Account Adjustment to Plaintiff is inconsistent with the law and has damaged Plaintiff.

15. Plaintiff has made years-long, good-faith efforts to resolve the issue administratively, only to be rebuffed by Defendants' bureaucratic unwillingness to cure an obvious and admitted defect in loan administration.

16. From 2022 to the present, Defendants, and their agents, including without limitation Federal Student Aid and its ombudsman; loan servicer Aidvantage; the Department's Inspector General, and the National Student Loan Data System (NLSDS), thwarted Plaintiff's attempts to correct NSLDS documentation on Plaintiff's Loans.

17. Plaintiff has exhausted available administrative remedies to resolve the coding error, including without limitation the Federal Student Aid appeal process; Aidvantage "customer advocate" resources; the U.S. Department of Education Office of Inspector General (OIG); American University Registrar; NSLDS "Customer Service," and the casework process of Plaintiff's member of Congress, U.S. Representative Aaron Bean.

18. Through the federal Privacy Act, Plaintiff also requested and received his FOIA file containing his Loans history dating back to the inception of the loans, only to find records before 2013 were fragmentary.

19. Plaintiff discovered that neither Defendants nor the Loans servicer retained payment records, thus frustrating Plaintiff's attempt to obtain verification of his payment history.

20. Aidvantage, a loan servicer contracted by Defendant U.S. Department of Education, blames a previous loan servicer (the defunct "Direct Loan Servicing") for the missing payment records.

21. Aidvantage customer advocates acknowledge in writing that records before 2013 were not retained, thus conceding Defendants' administrative error.

22. Nonetheless, payment plan selection forms and other documents show that the Plaintiff was paying as agreed throughout the period between June 19, 1999 and February 15, 2003.

23. Despite presenting these documents to Defendants, both directly and through Congressman Bean's office, Plaintiff has been unable to attain the relief

to which he is entitled under the law.

24. Though Plaintiff contacted the U.S. Department of Education's Office of Inspector General (OIG), that office has not acted on this clear administrative error but instead directed Plaintiff to other offices.

25. For example, OIG directed Plaintiff to consult Federal Student Aid at StudentAid.gov. Though Plaintiff has filed multiple "ombudsman" complaints with that website dating back to 2023, none of them have resulted in Defendants rectifying their error.

26. While Plaintiff attempted to contact the NSLDS "customer service" line, he was advised that line is not for actual borrowers, but for institutions like American University.

27. Plaintiff reached out to American University, whose registrar worked with NSLDS to fix the record, but the fix didn't resolve the coding error.

28. According to the American University registrar, an NSLDS agent suggested Defendants' grace period error was "too old" to fix.

29. Plaintiff also reached out to Congressman Aaron Bean for casework assistance. Though Defendants have acknowledged to Bean's office that Plaintiff's payments on his Loans appear to be undercounted, they have not granted relief as of the date of this filing.

30. The 2023 IDR Account Adjustment authorized credit to borrowers for all pay periods before 2013, including time spent in deferment or forbearance, as a cure to servicer documentation failures of the sort described above.

31. If Plaintiff had received full credit under the 2023 IDR Account Adjustment, his Loans would have been eligible for discharge on or about June 19, 2024, which is 25 years after his repayment began.

32. Defendants' actions have caused Plaintiff substantial harm, including without limitation the loss of progress toward loan forgiveness, increased interest accrual, and prolonged financial burden.

33. Plaintiff owes more than $171,966.39 in loans that would have been forgiven by Defendants if records had been properly maintained.

34. Since June 19, 2024, Plaintiff has made monthly payments in the amount of $255.25 to Defendant that would have not been necessary but for Defendants' failure to properly credit Plaintiff's payments on the Loans.

35. Plaintiff will likely suffer additional harm if Defendants do not discharge the Loans by Dec. 31, 2025, as any amount forgiven after that date may be subject to federal taxation.

## V. Relief

1. Plaintiff seeks declaratory relief, injunctive relief, and, in the alternative, a writ of mandamus compelling Defendants to correct the coding error on the NSLDS record, credit Plaintiff with the appropriate months toward IDR forgiveness, and provide all attendant relief.

2. The correction should confirm the grace period for Plaintiff's Loans ended on June 19, 1999 and set the proper amount of his total months in

repayment, which as of the date of this filing equals 312 months, rather than the 156 months currently and erroneously credited.

3. Plaintiff also seeks discharge of the Loans no later than December 31, 2025, in accordance with the terms of the 2023 IDR Account Adjustment.

4. If Defendants do not discharge the Loans until after December 31, 2025, Plaintiff seeks a monetary award of 24% of the discharged amount to defray the tax burden.

5. Plaintiff seeks a refund of all payments he made on the Loans after June 19, 2024, the date on which Defendants should have discharged the Loans, with pre-judgment and post-judgment interest as applicable.

6. Plaintiff also seeks an award of all court costs, including administrative costs and attorney costs as appropriate, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable authority. He is currently proceeding *pro se* but has consulted with attorneys and reserves the right to secure formal representation if necessary.

## VII. No Demand for Jury Trial

Plaintiff does not demand a jury trial, as this action arises under the APA.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

June 3, 2025

[/s] Anthony George Gancarski

Anthony George Gancarski